**JNO. McCALL COAL COMPANY, a Maryland corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 15090.**

United States District Court
D. Maryland.

Dec. 27, 1965.

John S. McDaniel, Jr., and Cable & McDaniel, Baltimore, Md., for plaintiff.

Fred W. Drogula, Attorney, Department of Justice, John W. Douglas, Asst. Atty. Gen., Washington, D. C., Thomas J. Kenney, U. S. Atty., Baltimore, Md., and Harland F. Leathers, Attorney, Department of Justice, Washington, D. C., for defendant.

WINTER, District Judge:

Plaintiff's motion for summary judgment, less a claimed set-off of the United States, was granted, in the amount of $126.72, for the reasons set forth in an oral opinion rendered October 22, 1965. Because of the importance of the issue presented by the claimed set-off, the reasons and authorities upon which the Court acted are herein set forth in greater detail.

Under a fifth contract between the parties, plaintiff agreed to deliver, and delivered, to the United States $11,240.46 worth of coal. The United States paid $2,744.41 of this amount. Against the difference of $8,496.05, an amount which is not disputed, the United States claimed a set-off of $8,369.33 under four previous coal contracts.

The set-off arose under the Walsh-Healey Public Contracts Act, 41 U.S.C.A. §§ 35–45, and regulations adopted thereunder, as applied to the four previous contracts between plaintiff and the United States. Under them plaintiff was to deliver, and did deliver, coal from Kistler No. 62 Mine of Young Weeks Coal Company, Inc., Kistler, West Virginia. In regard to these contracts, the Administrator, Division of Public Contracts, United States Department of Labor, determined that plaintiff and Young Weeks failed to pay minimum wages and overtime compensation and to provide safe working conditions in regard to employees of Young Weeks. This determination was made on September 28, 1961, pursuant to the provisions of § 5 of the Act, 41 U.S.C.A. § 39, and regulations issued thereunder, 41 C.F.R. §§ 50–203.-1–203.12.

Based upon a hearing before an examiner, the administrator found, and these findings are not contested, that plaintiff, a Maryland corporation, having its principal place of business in Baltimore, sells and distributes coal at wholesale. In 1956 and 1957 it was awarded four contracts for the delivery of bituminous coal to the United States. Each of the contracts was for an amount in excess of $10,000.00 and, therefore, subject to the provisions of the Act, which require, inter alia, that parties contracting with the United States pay established minimum wages and overtime compensation and provide safe and sanitary working conditions, 41 U.S.C.A. §§ 35(b) and 35(e). Plaintiff did not qualify as a "regular dealer" within the meaning of § 1(a) of the Act, 41 U.S.C.A. § 35(a),

because it did not have any storage yards or other facilities in which it stocked and from which it sold coal to the public.[1] Plaintiff's eligibility to contract with the United States rested upon plaintiff's compliance with regulations issued under the Act, 41 C.F.R. § 50–201.64(a).[2]

Pursuant to this regulation, plaintiff submitted for each of the four contracts a bid which named Young Weeks Coal Company, Inc., Kistler No. 62 Mine, Kistler, West Virginia, as plaintiff's supplier and, after the bids were accepted as submitted by the plaintiff, plaintiff advised Young Weeks that the latter must comply with the federally-established wage, hour and safety standards. Young Weeks complied with the wage standards (but not the safety requirements) [3] until May 14, 1957. For each working day from May 15, 1957 to June 14, 1957 employees of Young Weeks mined coal which was used to fulfill the plaintiff's contracts, but the employees were totally unpaid. The mine closed on June 14, 1957. On December 19, 1957 a petition for involuntary bankruptcy was filed against Young Weeks, and it was adjudicated a bankrupt on January 6, 1958. The bankrupt estate was insufficient even to pay in full a preferred claim for federal taxes; there has been no distribution for unpaid wages.

Although plaintiff paid Young Weeks for the coal which the latter mined in the period May 15 to June 14, 1957, wages unpaid by Young Weeks to its employees during that time amounted to $8,369.33.

Plaintiff seeks to escape the validity of the set-off on the ground that the

1. "§ 35. Contractors for materials, etc., exceeding $10,000; representations and stipulations

In any contract made and entered into by any executive department, independent establishment, or other agency or instrumentality of the United States, or by the District of Columbia, or by any corporation all the stock of which is beneficially owned by the United States (all the foregoing being hereinafter designated as agencies of the United States), for the manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,000, there shall be included the following representations and stipulations:

(a) That the contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract; * * *"

The Act does not define "regular dealer," but the Secretary of Labor, in exercise of the rule-making authority vested in him by § 4 of the Act, 41 U.S.C.A. § 38 has by regulation, 41 C.F.R. § 50–201.101(b), defined the term as:

"(b) A regular dealer is a person who owns, operates, or maintains a store, warehouse or other establishment in which the materials, supplies, articles, or equipment of the general character described by the specifications and required under the contract are bought, kept in stock, and sold to the public in the usual course of business."

2. "§ 50–201.604 Partial Administrative exemptions.

(a) Contracts with a person who regularly buys and sells coal on his own account in lots of not less than a cargo or railroad carload, or with a person who is authorized by one or more persons engaged in mining coal to negotiate and conclude contracts for the furnishing thereof in such lots, are exempt from the requirement of section 1(a) of the act and § 50–201.1 of this part that such person represent that he is a manufacturer or a regular dealer in coal: *Provided, however,* That all the following terms and conditions are met:

(1) That such person will notify the persons engaged in mining the coal that the purchaser thereof is the United States and that provisions of the Public Contracts Act are applicable; and

(2) That such person, apart from the liability of the mines, shall be liable for the observance in the mines of all the labor standards provided in section 1 of the act; and

(3) That such person notify the contracting agency that he will accept the contract upon the terms and conditions set forth above."

3. The finding that Young Weeks failed to observe safety requirements is of no significance in this case since no monetary penalty is sought to be recovered from plaintiff. This asserted set-off is solely the aggregate of unpaid wages.

failure of Young Weeks to pay any wages during the crucial period, as distinguished from its failure to pay some wages but less than the established minimum rates, did not constitute a breach of § 1(b) of the Act, 41 U.S.C.A. § 35(b),[4] that "all persons employed by the contractor * * * will be paid * * * not less than the minimum wages as determined by the Secretary of Labor * * *." It is next contended that, if the failure of Young Weeks to pay any wages constituted such a breach, plaintiff is not "the party responsible therefor" within the meaning of § 2 of the Act, 41 U.S.C.A. § 36, and, hence, is not liable to the United States, which sues for the benefit of the unpaid employees.

■ I conclude that plaintiff's first contention is lacking in merit. The first point pressed by plaintiff presents a matter of first impression judicially, but it is not a contention which presents real difficulty in decision. Section 1 of the Act, 41 U.S.C.A. § 35, expresses a plain and clear congressional intent that employees of persons engaged as suppliers to the United States where the value of the transaction exceeds $10,000 are to be paid the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work. This direction, when analyzed, embodies two concepts— first, that the employees of government suppliers be paid, and second, that they be paid at certain designated minimum levels. An examination of § 1, as well as the other provisions of the Act, gives no indication that Congress intended, in enacting the direction that employees be paid, that the Secretary of Labor, or his representative, or the courts were to engage in equitable considerations as to when to enforce this mandate. Thus, it makes no difference whether employees go unpaid because of bankruptcy or other cause presumably beyond the direct control of the employer, or whether they go unpaid to the full extent required by the law, because of inadvertence or wilful act on the part of the employer. Plaintiff's argument that § 1 is inapplicable when nonpayment is total and due to bankruptcy, but does apply when nonpayment is partial and results from inadvertence or wilful act of the employer, is an argument based on degree of nonpayment and leads to the absurd conclusion that Congress intended only to correct a partial wrong, but provided no remedy for the correction of a total wrong. It is no answer, as plaintiff contends, that had not plaintiff been in the picture the employees could not collect from Young Weeks because of its bankruptcy. Bankruptcy did render the wages uncollectible, but it did not diminish the liability of Young Weeks (unless and until a discharge was granted), nor the liability of the bankrupt estate. Nor can the Court accede to the argument that the sole purpose of the Act was to prevent underbidding which was made possible by the payment of substandard wages and that a further purpose of the Act was not also to protect employees from the loss of wages earned.

■■ Plaintiff's second contention is no more meritorious than its first. Section 2 of the Act, 41 U.S.C.A. § 36, provides that any breach of § 1 of the Act (including the failure to pay minimum wages), " * * * shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of such contract * * *" and the damages shall include " * * * a sum equal to the amount of any * * *

4. 41 U.S.C.A. § 35(b):
"(b) That all persons employed by the contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under said contract; * * *."

underpayment of wages due to any employee engaged in the performance of such contract * * *." The regulations previously cited rendered the plaintiff "the party responsible" for payment of minimum wages because the regulations require that a person not otherwise qualified as a regular dealer may become a government supplier on condition that such person " * * * shall be liable for the observance in the mines of all the labor standards provided in section 1 of the act * * *." 41 C.F.R. § 50–201.-604(a) (2). By entering into the four contracts to supply the United States with coal plaintiff accepted this condition of the regulations. The normal and natural meaning of this language of the regulations is that plaintiff rendered itself liable for payment of minimum wages in the mine and, hence, became "the party responsible therefor" within the meaning of the Act. That the regulations had such an effect was recognized in the dictum in United States v. New England Coal and Coke Co., 318 F.2d 138, 145–146 (1 Cir. 1963), and it was said:

> " * * * the regulations grant an exemption for certain coal dealers who do not qualify as regular dealers, and for that reason would not otherwise be eligible for government contracts, provided that such a dealer agrees to be liable for observance of Walsh-Healey Act standards in its supplying mines."

■ Plaintiff's second contention relates to an interpretation of the regulation. Plaintiff does not mount an attack on the validity of the regulation, but I would be remiss in interpreting the regulation if I did not give some consideration to its validity. Previously, I have referred to § 4 of the Act, 41 U.S.C.A. § 38, which vests in the Secretary of Labor authority to make rules and regulations. The delegated power is such " * * * as may be necessary to carry out the provisions of sections 35–45 of this title." I believe that the Secretary of Labor was eminently reasonable and

acting well within his delegated authority to adopt the regulation which defines "regular dealer" as one who has a stock in trade, and thereafter to adopt the regulation which permits a dealer in coal, not otherwise qualified as a regular dealer, to become a supplier to the United States upon the condition, *inter alia*, that such dealer shall be liable for the observance in the mines of all of the labor standards, including payment of minimum wages, as provided in the Act.

■ For the reasons stated, I conclude that in both respects in which an interpretation of the regulation and the Act is called into question by plaintiff's contentions, the Secretary of Labor and his designated representatives have made the correct interpretation. As an alternative ground for my decision, I recognize that the scope of judicial review in a case of this type is more limited than I have exercised. Ordinarily, a court is without authority to overturn an administrative interpretation of either the Act or regulations adopted thereunder unless it can be said that the construction of the Act, or construction of the regulation, is " * * * plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Even if my views with regard to interpretation differ from those of the administrative agency, I would not be authorized to substitute my views for those of the agency if it could be said that the administrative interpretation was a reasonable one. Udall v. Tallman, 380 U.S. 1, 4, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); McLaren v. Fleischer, 256 U.S. 477, 481, 41 S.Ct. 577, 65 L.Ed. 1052 (1921). As to both interpretations which plaintiff's contentions question, the interpretations followed by the Secretary of Labor, acting through the administrator, are reasonable, if not clearly correct.

For the reasons stated, the set-off of the United States was sustained, and summary judgment for plaintiff entered, in the amount of $126.72, with costs.